LIFE & CASUALTY INSURANCE CO. OF TENNESSEE, Plaintiff in Error, v. J. H. MANESS, Defendant in Error.

Western Section. April 3, 1931.

Petition for Certiorari denied by Supreme Court, July 1, 1931.

Pearson & Hewgley, of Jackson, for plaintiff in error.

T. W. Pope and N. R. Barham, both for Jackson, for defendant in error.

SENTER, J.   This is a suit upon an accident insurance policy alleged to have been issued by the Life & Casualty Insurance Company of Tennessee, insuring J. H. Maness against certain accidents, in the sum of $1250. The parties will be referred to as in the court below, J. H. Maness, plaintiff, and Life & Casualty Insurance Company of Tennessee, defendant.

The first count in the declaration was abandoned in the court below, and the second and third counts alone were relied upon by the plaintiff for a recovery. The second count avers in substance that under and by the terms of the contract of insurance, if the plaintiff suffered the loss of the sight of either eye by being struck by a vehicle which was being propelled by gasoline, while plain-

tiff was walking or standing on any public highway, the defendant would pay to plaintiff the sum of $1250; that on the —— day of October, 1928, while the policy contract was in full force and effect, and while the plaintiff was walking on and along a public highway in McNairy County, Tennessee, plaintiff suffered the loss of the sight of his left eye, by being struck on, in and about said eye by an automobile, which automobile was a vehicle and was being then and there propelled by gasoline. The declaration further avers that said automobile struck and caused the injuries to plaintiff in the way and manner as follows: "That is to say, that the said highway on which plaintiff was walking was a newly gravelled highway; that the said automobile was being propelled at a rapid rate of speed, going in the same direction on and along said highway as was plaintiff; that said automobile had passed plaintiff and was a few feet ahead of plaintiff; that then and there the turning wheels or some other part of said fast moving automobile knocked, or otherwise caused a rock or other hard substance to be thrown against and struck the said eye of plaintiff, with such great force and violence as to thereby destroy and cause the total loss of the sight of said eye of plaintiff, and of which loss the defendant had due notice."

The third count seeks to recover the statutory penalty for the wilful failure of the defendant to pay the claim.

The defendant filed a demurrer to the second count of the declaration on the ground that the averments in the declaration did not make out a valid claim against the defendant under the terms of the policy. The demurrer was sustained by the trial judge, and on appeal to the Supreme Court by plaintiff, the judgment of the trial judge was reversed by the Supreme Court and the case remanded for a trial on the merits.

Upon the remand of the case the defendant filed two pleas, as follows:

"First, it does not owe the plaintiff as he has alleged in his declaration.

"Second, the defendant Life & Casualty Insurance Company of Tennessee for further plea says it did not promise as the plaintiff has in his declaration alleged."

The trial of the case resulted in a jury verdict in favor of the plaintiff for the sum of $1250, the amount of the policy. A motion for a new trial by defendant was overruled and judgment rendered on the verdict in favor of plaintiff. From this judgment the defendant has appealed in the nature of a writ of error to this court, and has assigned the following errors.

First, the court erred in overruling defendant's motion for a directed verdict, said motion being as follows: First, because there

is no evidence upon which the judgment of the court and the verdict of the jury can be predicated.

Second, that under the terms of the contract sued on, the defendant is not liable to this plaintiff in any amount.

Second, the court erred in overruling defendant's motion for a new trial set out in full supra.

At the conclusion of all the evidence the defendant moved the court for a directed verdict, which motion was overruled, and to which action of the court the defendant excepted.

Under the assignments of error several questions are presented and relied upon by appellant not specifically set out under either of the assignments of error. The second assignment of error simply states that the court erred in overruling defendant's motion for a new trial. The motion for a new trial is quoted in the brief and is as follows:

1.

"Because the verdict of the jury is contrary to the evidence introduced on the trial of the cause.

2.

"Because the evidence preponderates against the verdict of the jury.

3.

"Because there is no evidence to support the verdict of the jury.

4.

"Because the trial judge erred in overruling the motion of defendant for a directed verdict in its favor, said motion being as follows: (Being the same as set out under the first assignment of error).

5.

"Because it is affirmatively shown by the uncontradicted evidence that the defendant is not liable to plaintiff on the contract sued on in this cause.

6.

"Because it is affirmatively shown by the uncontradicted proof in the cause that plaintiff has heretofore testified in a suit brought by him against the National Life & Accident Insurance Company that he did not lose the sight of his eye within thirty days after the accident upon which his suit is based and is now estopped to deny his statement made under oath in said suit."

Under the first assignment of error, on the question that there is no evidence to support the verdict, it is contended by appellant that the policy of insurance sued on was not introduced in evi-

dence, and hence no contract of insurance was proven by plaintiff.

It does appear that the insurance policy sued on was made an exhibit to the declaration, and when the declaration was read to the court and jury, it was agreed that the insurance policy would be treated as read. In the examination of the plaintiff he was asked with reference to the application for the policy and was also asked with reference to the issuance of the policy by the defendant. There is a stipulation contained in the bill of exceptions which reads as follows: ''It is agreed by counsel that the policy of insurance, being No. 224330, exhibited with the declaration will be attached to the bill of exceptions as an exhibit thereto, and that said original policy will be sent up with the record instead of being copied herein.''

Following this stipulation contained in the bill of exceptions, the bill of exceptions recites as follows: '':This was all the evidence introduced upon the trial of this cause.''

The motion for a directed verdict made no mention that the policy sued on had not been put in evidence. There was no specific mention in the motion for a new trial that the policy sued on had not been introduced in evidence. The plaintiff, while on the witness stand, was handed the policy and testified concerning it and no objection made. The stipulation in the bill of exceptions would indicate that the policy was put in evidence. It was made a part of the bill of exceptions and an exhibit thereto by the stipulation of counsel. When the declaration was read to the court and jury, the reading of the insurance policy was specifically waived, it being stated in open court that it would be treated as read. At no time in the trial of the case, or in the motion for a new trial or in the motion for a directed verdict was the attention of the trial judge called to the question that the policy had not been actually introduced as evidence. The question is made for the first time on this appeal. We are of the opinion that the stipulation in the bill of exceptions concludes appellant against now making the question in this court that the policy sued on and made a part of the bill of exceptions was not introduced in evidence. The recitation immediately following this stipulation, we think under any fair interpretation, is equivalent to an admission that the insurance policy sued on was put in evidence, although not actually read to the jury, but treated as having been read.

Under the assignments of error it is further contended by appellant that there is no evidence in the record to warrant the jury in finding that the rock or other substance which struck plaintiff in the eye was thrown from the automobile or by the rapidly moving automobile. It is the insistence of appellant that the mere

fact that a rock or gravel or some other substance struck plaintiff in the eye at the time the automobile was passing him on the highway is not sufficient to warrant the jury in finding that the automobile which passed plaintiff threw the rock or other substance.

The evidence on this question is confined to the statement made by plaintiff as a witness. He stated that he had gotten off of a bus and was walking south on the gravel road, and that there was loose gravel or small rocks on the road; that the automobile traveling at a rapid rate of speed passed him and within a few feet of him and just as it passed him he was struck in the eye by rock or other hard substance from the road. He testified that the automobile caused the injury. It was late in the afternoon, and about dusk, and that he did not actually see the rock or other substance at the time it struck him. He stated, however, that he knew that it was thrown by the automobile. He did not hear any sound from any other source. At the place on the road where it occurred, it was open on both sides and there was no person near to have thrown the rock. He described fully the circumstances. We think that a fact can be proven by circumstances as well as by direct evidence. Under all the circumstances surrounding the incident, it would be but a remote probability that the stone which struck him in the eye, or other substance, could have come from any other source. It was a gravel road bed and the automobile was traveling at a rapid rate of speed. The rapidly revolving wheels with inflated rubber tires running at a rapid rate of speed over a road bed composed of loose gravel could have been the only reasonable theory upon which the flying stone could have been caused. While plaintiff did not actually see the stone as it was picked up by the tire and thrown, yet from his position on the road as the automobile passed, he said he knew that the rock or gravel could only have been thrown by the automobile.

We think the facts and circumstances surrounding the transaction afford sufficient evidence to warrant the jury in the conclusion that the stone or other substance was thrown by the automobile, striking plaintiff in the eye, causing the injury.

The sixth ground of the motion for a new trial relied upon by appellant under the second assignment of error, presents the question that it affirmatively appears by the uncontradicted evidence in the cause that the plaintiff had heretofore testified in a suit brought by him against the National Life & Accident Insurance Company that he did not lose the sight of his eye within thirty days after the accident, and that plaintiff is therefore estopped to deny his statements made under oath at the trial of that case. The rule of a judicial estoppel is invoked by appellant.

422

On the cross-examination of plaintiff in the present suit he was asked if he had not made certain statements with reference to the time in which he lost the sight of his eye while testifying in a suit brought by him on another policy and against another defendant. On this subject the witness was asked and answered as follows:

"Q. You waited how long before you came to see the doctor? A. Monday or Tuesday, I believe it was Tuesday I came.

"Q. Of the following week? A. Yes, sir.

"Q. Your eye paining you then? A. Yes, sir.

"Q. You took treatment from Dr. Dancy? A. Yes, sir.

"Q. And you continued on up until about the ninth of January? A. I continued on up until about March, the treatment.

"Q. You say you lost your sight on the ninth of January? A. Yes, sir.

"Q. Was there anything happened on the night that made you know you lost the sight of your eye? A. Yes, sir.

"Q. What was that? A. I know I couldn't see.

"Q. Was there anything made you discover that? A. I could discover a light, I would know it when I went to Dr. Dancy's office, and I could just discover it when I would go in.

"Q. You couldn't see an automobile or anything? A. No, sir.

"Q. Did you make any test to see? A. Yes, sir. I would try when I went in the office.

"Q. Before you went in the office did you make a test? A. Yes, sir, I have at times—I could discover there was a fire light, I could just discover there was a light.

"Q. You say you never did make any test of it up until that time except in his office? A. No, sir, I didn't say I didn't. I said I did.

"Q. When you would make those tests could you see out of it? A. I just could discover an electric light or light of a fireplace or lamp.

"Q. You had a loss against the National Life & Accident Co. growing out of a similar policy and with reference to this same accident?

(Objected to. Objections overruled.)

"Q. And you drew compensation from the National Life & Accident Co. for damage to that eye from the time it was injured until the 9th of January on account of the fact that you were disabled in that eye? A. Yes, sir.

"Q. And you testified in that law suit? A. Yes, sir.

"Q. I will ask you if you didn't state—I will ask you if you were not asked this question, 'During this time, Mr. Maness, from the time the accident occurred until January 9th, did you have any sight in that eye' and did you answer, 'Yes, sir, I could see some of the time up until January 9th.' A. I don't think I

answered just that way. I think I answered like I did a while ago. I could discover light.

"Q. Do you deny making that answer? A. No, sir, I don't deny it.

"Q. Do you admit it? A. I admit what I said.

"Q. Did you say that? A. State the question again.

(Question repeated).

"A. I don't know just how I answered the question, but it is then just like it is now. I meant I could discover a light.

"Q. Alright,—I will ask you this: 'Q. Did you try your eye to see if you could see? A. Yes, sir.' And the next question is, 'How often,' and the answer, 'several times a day.' A. (Interrupting). Yes, sir.

"Q. (Continues reading from transcript). 'Q. Was there any peculiar sensation in the eye up to January 9th? A. Yes.

"'Q. Could you tell when your eye went out? A. Yes, sir, I could. Q. When and where were you? A. I was building a fire in the cook stove on the morning of January 9th, and it seemed like something broke loose?'

"Q. That is true? A. Yes, sir.

"Q. And up to that time you could discover a light, an object? A. Yes, sir, I could discover a lamp light, an electric light or a fire light, something like that.

"Q. I will ask you if you were asked this question:

"'Q. Could you see any other object,' And your answer: 'Yes, sir, I could see a man walking and see automobiles?' Did you say that, or not? A. I don't think I did.

"Q. You deny you made that statement? A. I aint going to positively deny it, but I don't think I made that statement.

"Q. Well, you say now, Mr. Maness, that you could tell a light, you could see a firelight, and an electric light, things of that kind up to January 9th? A. I say I could discover it was light, I couldn't see the light, I could just discover there was a light in front of me."

The only witness offered by the defendant was Mrs. Clara Ausbun. She was introduced to rebut the evidence of plaintiff with reference to his testimony given at the trial of his case against the other insurance company. She testified that she was a stenographer, and that she acted as the court reporter at the trial of the case of J. H. Maness v. The National Life & Accident Insurance Company. She testified that she transcribed her stenographic notes of the testimony of the witness J. H. Maness in that case. She was asked and answered as follows:

"Q. I hand you this document, and ask you if that is the transcript of his testimony? (Passing paper to witness). A. It is.

"Q. Referring to that, Mrs. Ausbun, I will ask you whether or not on the examination of Mr. Maness as a witness in that law suit he was asked this question with reference to his eye sight? 'Q. Could you see any other objects?' The witness answered, 'I could see men walking and see automobiles,' was that in his testimony? A. Yes, sir.

"Q. Did he testify to that? A. Yes, sir, it was; and that is the answer he gave.

"Q. I will ask you if he was asked this question, 'Q. During the time, Mr. Maness, from the time the accident occurred to January 9th, did you have any sight in this eye? A. Yes, sir, I could see some of the time up till January 9th.' Was he asked that question and answered it in that manner, Mrs. Ausbun? A. Yes, sir."

It is upon this evidence that appellant bases the contention that the rule of a judicial estoppel would apply, and that because of the provision in the policy that the loss of the sight of the eye must result within thirty days after the accident, and plaintiff having testified in a former suit that he actually lost the sight of his eye on January 9th following the accident in October, that he is now estopped from claiming that he lost the sight of the eye within thirty days after the accident occurred.

Appellant cites and relies upon several Tennessee cases and text writers. Among them is the case of Chilton v. Scruggs, 5 Lea, 318, wherein the court said: "A party will not be permitted to deny in one proceeding facts which he has admitted or averred in his solemn pleading under oath in another proceeding."

Also the case of Stevenson v. Walker, 8 Baxter, 289; and Hamilton v. Zimmerman, 5 Sneed, 39. In the Stevenson case the court said: "Where certain statements are made by a party in a sworn bill he is estopped from denying those statements in any subsequent proceeding, or from asserting the contrary to be true."

In the case of Stillman v. Stillman, 7 Baxter, 175, it is said, "The same rule applies where a party has testified to certain facts in a deposition taken in the course of a judicial proceedings."

In Cooley v. Steele, 39 Tenn., 608, another case cited and relied upon by appellant, the rule of estoppel was applied where the complainant sought relief in conflict with statements and admissions made by her in a former deposition which she had given. It appeared in that case that she had made statements and admissions in a former deposition contrary to her contention in a subsequent suit, and the court applied the rule of judicial estoppel. In the case of Stearns Coal Co. v. Jamestown Co., 141 Tenn., 206, it is held that while the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict,

yet it is frequently applied where no oath is involved, to one who undertakes to maintain inconsistent positions in a judicial proceeding.

We think that it is too well settled to need the citation of authority, that the rule of estoppel will prevent inconsistent statements either in court pleadings or in evidence, where it appears that the inconsistency is patent. As for instance, a written pleading filed in a suit speaks for itself, and if in that or a subsequent trial an inconsistent pleading or evidence is filed or introduced, the inconsistency would be patent. And this would also be true with a deposition given by a witness at a former trial, and where he undertakes to testify to facts inconsistent with his evidence given in the deposition. The inconsistency or conflict would be patent. In the present case appellant relies upon the evidence of the court reporter who reported the former suit. She does not testify from an independent recollection as to what the witness stated in the former suit, but testifies from the transcript of her stenographic notes of the evidence taken by her in the former suit. The plaintiff denies that he made the statements, or that he made them in the way and manner that the transcript shows, and he also explains what he meant, and according to his evidence there was no inconsistency. It then became a question for the determination of the jury, there being a conflict between the evidence of the plaintiff and the evidence of the court reporter as to what he said or stated as a witness in the former suit. Under these facts we do not think that the rule of judicial estoppel applies.

It results that we find no error, and all assignments of error are accordingly overruled and the judgment of the lower court is affirmed.

Appellee will pay the cost of this appeal.

Longstreet and Heiskell, Sp. JJ., and Owen, J., concur.